**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, SBN 144074
dalekgalipo@yahoo.com
Melanie T. Partow, SBN 254843
mpartow@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, California 91367
Telephone:  (818) 347-3333
Facsimile:    (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAILY NIDA, individually and as successor in interest to Michael Nida; S.N., a minor by and through her guardian ad litem, individually and as successor in interest to Michael Nida; A.N., a minor by and through her guardian ad litem, individually and as successor in interest to Michael Nida; X.N., a minor by and through her guardian ad litem, individually and as successor in interest to Michael Nida; M.N., a minor by and through her guardian ad litem, individually and as successor in interest to Michael Nida; MARITZA ODELL, an individual; and MICHAEL LEE NIDA, an individual,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF DOWNEY; OFFICER STEVEN DEAN GILLEY, an individual; OFFICER BLANCA JASMIN REYES, an individual; and DOES 3-10, inclusive,<br><br>　　　　　　　　Defendants. | Case No.: CV 12-01382 SJO(JEMx)<br><br>*[Honorable S. James Otero]*<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently herewith*: Plaintiffs' [Proposed] Separate Statement of Controverted and Uncontroverted Facts; Declaration of Melanie T. Partow (and Exhibits); Declaration of Roger A. Clark; Declaration of Timothy Palmbach; Plaintiffs' Evidentiary Objections]<br><br>Date:　　March 25, 2013<br>Time:　　10:00 a.m.<br>Crtrm.: 1 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................1

II.     STATEMENT OF FACTS .................................................................3

    A.    The Information Broadcast about the ATM Robbery Suspects
        Evidences no Connection to Mr. or Mrs. Nida. ....................................3

    B.    Mr. Nida's Description on the Night of the Incident ............................3

    C.    Officer Reyes' Initial Observations of Mr. Nida .................................3

    D.    Mr. Nida Complied with Commands to Get on the Ground, He
        Appeared Unarmed, and was not Assaultive or Combative. .................4

    E.    Mr. Nida Ran Away from the Officers, was Unarmed, Made no
        Threatening Movements, and Posed No Immediate Threat of
        Death or Serious Bodily Injury When He was Shot in the Back
        by Officer Gilley. ...............................................................................5

    F.    The Unreasonable Detention of Mrs. Naily Nida. ...............................6

III.    LEGAL STANDARD .........................................................................7

IV.     ARGUMENT .......................................................................................7

    A.    The Detentions of Mr. and Mrs. Nida were Unreasonable Given
        that they did not Match the Description of the Robbery Suspects. ........7

    B.    Officer Gilley's Use of Force Against Mr. Nida was
        Unreasonable. .....................................................................................9

    D.    The Fleeing Felon Rule is Inapplicable to this Case. .........................14

    E.    Officers Gilley and Reyes are Not Entitled to Qualified
        Immunity. ..........................................................................................15

    F.    The Undisputed Facts Satisfy Both the Deliberate Indifference
        and  Purpose to Harm Standards Required to Sustain Plaintiffs'
        Fourteenth  Amendment Claims. .......................................................17

    F.    There is No Immunity under California Law for Battery,
        Negligence, or False Arrest. ..............................................................18

    J.    Officer Reyes and Officer Gilley were Negligent. .............................18

    K.    There is Evidence to Support the Plaintiffs' Claim for Punitive
        Damages ............................................................................................20

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2

IV.   CONCLUSION ................................................................................................20

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

<u>Cases</u>

4  *Adickes v. S.H. Kress & Co.* 398 U.S. 144 (1970) ......................................................7

5  *Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ...................................................16

6  *Beal v. Blumenfeld Theatres, Inc.*, 177 Cal.App.2d 192, 194 (1960); .....................20

7  *Brinegar v. U.S.,* 338 U.S. 160, 175-76 (1949) 13 ..................................................13

8  *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) .......................................................16

9  *Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009) .........................................14, 19

10 *Bryan v. MacPherson*, 630 F.3d 805, 827 (9th Cir. 2010)......................................12

11 *Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003 .....................15

12 *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002)...................................................16

13 *Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir.1991).............................17

14 *Davis v. Johnson*, 128 Cal.App.2d 466, 472 (1954)..................................................20

15 *Davis v. Little*, 851 F.2d 605, 607 (2d Cir. 1988).....................................................15

16 *Deorle v. Rutherford*, 272 F.3d 1272...............................................................12, 13

17 *Dillenbeck v. City of Los Angeles*, 69 Cal.2d 472, 477-78 (1968 ...........................20

18 *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003)...............................7

19 *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990) ..............................9

20 *Espinosa v. City & Cnty. of S.F.,* 598 F.3d 528, 532 (9th Cir. 2010) .....................15

21 *F.C. v. County of Los Angeles*, 2010 WL 5157339, *6 (C.D. Cal. Dec. 13, 2010) ..18

22 *Garcia v. City of Merced*, 637 F. Supp.2d 731 (E.D. Cal. 2008);............................18

23 *Gibson v. City of Pasadena*, 83 Cal. App. 3d 651, 658 (1978)................................20

24 *Graham v. Connor*, 490 U.S. 386 (1989) .................................................................10

25 *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 588 (1970) .........................................20

26 *Harris v. Roderick,* 126 F.3d 1189, 1201 (9th Cir. 1997)..................................12. 17

27 *Hayes v. County of San Diego*, 638 F.3d 688 (9th Cir.(Cal.) 2011) ........................19

28

*Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000 ............... 12

*Hopkins v. Andaya*, 958 F.2d 881 (9th Cir. 1992) ........................................ 7, 17

*Hunter v. Bryant,* 502 U.S. 224, 229 (1991) ............................................ 16

*Johnson v. Jones*, 515 US 304, 313 (1995) .............................................. 15

*Kirby v. Duva*, 530 F.3d 475, 483–84 (6th Cir. 2008); ............................... 15, 18

*Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) ..................... 15

*Knapps v. City of Oakland*, 2009 WL 2390262. (N.D. Cal. 2009 ......................... 18

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872 (9th Cir. 1987) ................................................................................. 7

*Lytle v. Bexar County, Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) ..................... 15

*Mackinney v. Nielsen,* 69 F.3d 1002, 1007 (9th Cir. 1995) ............................. 9

*Martinez v. City of Los Angeles*, 141 F.3d 1373 (9th Cir. (Cal.) 1998); ............. 18

*Meakens v. Benz*, 2013 WL 56032, *3 (6th Cir., 2013) ................................... 9

*Megargee v. Wittman*, 550 F.Supp.2d 1190 (E.D. Cal.2008) ............................. 18

*Mendoza v. City of Rome, N.Y.,* 872 F.Supp. 1110, 1117 (N.D.N.Y. 1994) ... 8. 10, 11

*Michigan v. Chestnut*, 486 U.S. 567, 573 (1988), ...................................... 9

*Miller v. Kennedy*, 196 Cal. App. 3d 141, 145 (1987) ................................. 20

*Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1101 (2004) ................... 18, 19

*People v. Bower*, 24 Cal.3d 638, 644 (1979) ........................................ 8, 11

*People v. Bower*, 24 Cal.3d at 643 ...................................................... 9

*People v. Koontz*, 27 Cal. 4th 1041, 1080, 46 P.3d 335, 361 (2002) .................. 18

*People v. McReynolds*, 8 Cal.3d 655, 658 (1973). ..................................... 11

*People v. Sanchez*, 26 Cal.4th 834, 849 (2001). ...................................... 18

*People v. Superior Court (Kiefer)*, 3 Cal.3d 807, 825(1970); ......................... 11

*People v. Walker*, 210 Cal.App.4th 1372, *6 (2012) .................................. 8. 9

*Porter v. Osborne,* 546 F.3d 1131, 1137 (9th Cir. 2008) .............................. 17

*Powell v. Pacific Electric Ry. Co.*, 35 Cal.2d 40, 46 (1950) ........................ 20

*Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1069 (S.D. Cal. 1994) ......... 14

*Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002) ..................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Santos v. Gates,* 287 F.3d 846, 855 n. 12 (9th Cir.2002) ...........................................16

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ..............................................................7

*Scruggs v. Haynes*, 252 Cal.App.2d 256 (App.1 Dist. 1967). ....................................18

*Sibron v. New York*, 392 U.S. at 66-67 ......................................................................10

*Smith v. City of Hemet*, 394 F.3d 689 (2005) (*en banc*) ............................................12

*Tennessee v. Garner*, 471 U.S. 1 (1985) ......................................................10. 15, 16

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) ..................................................7

*Torres v. City of Madera,* 648 F.3d at 1124; *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (...............................................................................16

*U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980)............................................................9

*U.S. v. Minor*, 382 F.Supp. 203, 207 (D. Hawaii 1974)........................................8. 10

*Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010) ............................................17

*Williams v. Superior Court*, 168 Cal.App.3d 349, 354 (1985)....................................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case involves the unjustified and unreasonable detention and shooting of Mr. Michael Nida ("Mr. Nida") by defendant Officer Steven Gilley ("Officer Gilley") that took place on October 22, 2011.  The plaintiffs are Mr. Nida's four minor children, his wife, and his parents.  Mrs. Naily Nida ("Mrs. Nida") was unlawfully detained after the shooting.  On the night of the incident, Mr. Nida had not committed any felony.  In fact, he and his wife were preparing to celebrate his birthday.  Mr. Nida is Hispanic and on that night was wearing baggy blue jeans, a blue and yellow striped polo shirt, and a black baseball hat.  The officers admit that Mr. Nida appeared Hispanic and did not match the description of the robbery suspects, who were described as male blacks with dark clothing, black hooded sweatshirts, and one plaid hoody.  The suspects were never described as Hispanic, or wearing baggy jeans, a blue and yellow striped shirt, or a baseball hat.

When Officers Gilley and Powell first observed Mr. Nida, they could see that he had no weapon in his hands and no visible weapon in his waistband.  Officers Gilley and Powell ordered Mr. Nida to get down on the ground and he complied within five seconds.  As Mr. Nida complied and was flat on the ground, Officer Gilley stepped on Mr. Nida's back, pointed his MP5 submachine gun at him, checked Mr. Nida for weapons, and threatened to blow Mr. Nida's head off.  Officer Gilley found no weapons.  Mr. Nida was not assaultive or combative with the officers and never verbally threatened the officers at any time.

According to eye witness Gerardo Aguilar, Mr. Nida got up without touching the officers and started running away.  As he got up from the ground and before he was shot, Mr. Nida's hands were visible and the officers could see that he had nothing in his hands.  Mr. Nida never reached for his waistband or his pockets and even Officer Gilley conceded that Mr. Nida never made any threatening reaching movement towards the officers before Officer Gilley shot him.  Officer Gilley was

-1-

1  aiming at Mr. Nida's back when he shot him.  Importantly, according to Officer
2  Powell, who was a few feet away from Officer Gilley at the time of the shooting, there
3  was no immediate defense of life situation at the time of the shooting and it would be
4  inappropriate to shoot Mr. Nida as a "fleeing felon" based on his training.  Officer
5  Powell claims Mr. Nida was stationary and not running away when was shot, and
6  Officer Powell admitted that he could see Mr. Nida's hands and that Mr. Nida had
7  nothing in his hands at the time of the shooting.  Given these disputed and undisputed
8  facts, summary judgment cannot be granted.

9      Additionally, the officers are not entitled to qualified immunity for two reasons.
10  First, the U.S. Supreme Court has made it clear that qualified immunity is unavailable
11  on summary judgment when there are disputed issues of material fact.  Some of the
12  disputed material issues in this case include inconsistencies between the officers' own
13  accounts as to whether Mr. Nida was running or stationary when he was shot, whether
14  Mr. Nida turned toward the officers when he was shot, whether Mr. Nida made any
15  threatening reaching movement before he was shot, and whether it was reasonable to
16  believe that Mr. and Mrs. Nida were connected with the robbery given that they did
17  not match the description of any suspect.  Moreover, the law with respect to the use of
18  deadly force and detention were clearly established at the time of the incident.

19      Viewing the disputed and undisputed material facts in Plaintiffs' favor,
20  including all reasonable inferences therefrom, summary judgment and qualified
21  immunity are unavailable for Officer Gilley on Plaintiffs' detention, force, and
22  familial relationship claims under the 4th and 14th Amendments, the state law wrongful
23  death claims for battery and negligence, and for false imprisonment and punitive
24  damages.  Summary judgment and qualified immunity are also unavailable to Officer
25  Reyes on the unlawful detention/false imprisonment of Mrs. Nida, on Plaintiffs'
26  negligence claims, and on the punitive damages claims.   Defendants' Motion should
27  be denied.
28

## II.   STATEMENT OF FACTS

**A.   The Information Broadcast about the ATM Robbery Suspects Evidences no Connection to Mr. or Mrs. Nida.**

The initial call regarding the ATM robbery came in at 7:17 pm. Plaintiffs Additional Material Fact ("PAMF") 118.  The bank was closed. PAMF 128.  It was communicated that the suspects were black males wearing dark clothing and black "hoodies" (hooded sweatshirts). PAMF 56(b), 120.  It was later described that one hoodie was black and one was plaid. PAMF 121.  The suspects took $40. PAMF 128. There was no information that anybody was injured or that any shots were fired. PAMF 55(a), 129.  No information was broadcast concerning the suspects' age, weight, height, or other identifying features. PAMF 130.  Officers initially heard mention of a white van or truck, but it was later broadcast that the suspects were on foot. PAMF 194, 217.  Officer Gilley never saw a white truck before the shooting. PAMF 131.  There was no information broadcast that either of the robbery suspects were Hispanic and no information that any female was involved in the robbery. PAMF 122, 127, 195, 218.  There was no information that the suspects were wearing a striped shirt, baggy blue jeans, or a baseball hat. PAMF  57, 126.  A perimeter was set up in the area. PAMF 139.

**B.   Mr. Nida's Description on the Night of the Incident**

On October 22, 2011, Mr. and Mrs. Nida were out running errands before going to dinner for Mr. Nida's birthday. PAMF 170.  Mr. Nida was wearing a blue collared polo shirt with yellow stripes, baggy blue jeans, and a black baseball hat. PAMF 125, 233.  Mr. Nida was not wearing anything plaid, was not wearing a black sweatshirt or a hoodie, and did not match the clothing description of the ATM suspects. PAMF 124, 132.  Mr. Nida was Hispanic and appeared Hispanic to Officers Gilley and Reyes. PAMF123, 219.

**C.   Officer Reyes' Initial Observations of Mr. Nida**

Officer Reyes identified Mr. Nida as a male Hispanic, did not see Mr. Nida

wearing a plaid shirt, and admits that she knows the difference between stripes and plaid. PAMF 219.  Officer Reyes watched Mr. Nida cross the street and enter a tobacco shop, but she did not stop Mr. Nida before he entered the shop, follow him into the tobacco shop, or dispatch that she had potentially located one of the ATM suspects. PAMF 222, 223, 224, 225. Only when Mr. Nida exited the shop did she stop him. PAMF 226.  Officer Reyes did not draw her gun, never told Mr. Nida to put his hands behind his back, and never tried to handcuff him. PAMF 227, 228.  Mr. Nida complied with Officer Reyes' request for identification. PAMF 229.  Officer Reyes admits that she made a mistake when she broadcast that a male Hispanic wearing a plaid shirt was running from her.  PAMF 231.  Officer Reyes did not broadcast any information that Mr. Nida had committed any crime or that he was a suspect in the ATM robbery.  PAMF 232.  In her contact with Mr. Nida, Officer Reyes did not act as though Mr. Nida was a robbery suspect. PAMF 204.

**D.  Mr. Nida Complied with Commands to Get on the Ground, He Appeared Unarmed, and was not Assaultive or Combative.**

Officer Gilley had completed his response to the robbery call and dispatched that he was available to go to another call when he saw Mr. Nida running.  PAMF 134.  Officer Gilley was done looking for the ATM suspects. PAMF 134.  In fact, when Officer Gilley saw Mr. Nida, he was not sure that Mr. Nida was related to the ATM robbery. PAMF 135-6.

As Mr. Nida came over the wall into the alley, his shirt lifted up and there were no visible weapons in his waistband. PAMF 59-62.  When Officer Gilley saw Mr. Nida walking in the alley, he told Mr. Nida to get down and Mr. Nida complied within five seconds. PAMF 64, 65.  Mr. Nida had no visible weapons in his hands or clothing and no bulges or anything sticking out of his clothing. PAMF 80, 138.  Officer Gilley saw Mr. Nida put his hands on the ground and could see that Mr. Nida had nothing in his hands.  PAMF141.  Mr. Nida did not punch, kick, verbally threaten, or attempt to assault the officers. PAMF 144.  Officer Gilley put a foot on Mr. Nida's back, pointed

his MP5 submachine gun at Mr. Nida, and told Mr. Nida, "I'll blow your head off." PAMF 142. Officer Gilley checked Mr. Nida for weapons when he was on the ground. PAMF 97. As Mr. Nida got up from the ground, Officer Gilley could see his hands and could see that he had nothing in his hands. PAMF 146. Mr. Nida was not assaultive or combative while he was on the ground. P AMF 73. Officer Gilley never told Mr. Nida he was under arrest because Mr. Nida was not under arrest. PAMF 160.

**E.      Mr. Nida Ran Away from the Officers, was Unarmed, Made no Threatening Movements, and Posed No Immediate Threat of Death or Serious Bodily Injury When He was Shot in the Back by Officer Gilley.**

From the time Mr. Nida got up to run away to the time of the shots was 2 to 3 seconds. PAMF 149. Officer Gilley never saw Mr. Nida reach in his pocket. PAMF 147. Officer Gilley never saw Mr. Nida reach in his waistband. PAMF 148. When Mr. Nida got up, he did not say anything and did not attempt to attack the Officers. PAMF 150. Officer Gilley never said anything to Mr. Nida after Mr. Nida got up and before the shots, including any warning that he was going to shoot. PAMF 151. According to Officer Gilley, Mr. Nida was running away from him when he was shot and Officer Gilley could see Mr. Nida's back when he fired. PAMF 152. Officer Gilley was aiming at Mr. Nida's back when he fired. PAMF 156. Officer Gilley did not see Mr. Nida make any sudden threatening reaching movement before he shot him. PAMF 155. In his original statement, Officer Gilley never said that Mr. Nida turned towards him before shooting. PAMF 158. As Mr. Nida got up and was running away from the officers, Officer Powell could see Mr. Nida's hands and could see he had nothing in his hands. PAMF 78-81. Officer Gilley never saw a gun or anything that looked like a gun. PAMF 157. Officer Gilley observed Mr. Nida's arms moving and pumping as he was running away from him. PAMF 159.

Officer Powell did not shoot because he could see both of Mr. Nida's hands at the time of the shooting and he had nothing in his hands. PAMF 81, 82. Officer Powell also did not shoot at Mr. Nida because when he was running away, it was not a "fleeing felon" situation based on his training, and Officer Powell's training was not

to shoot just because a hand temporarily goes out of view or someone is running away. PAMF 84, 85, 92.  Officer Powell was surprised by the shots, as it was not an immediate defense of life situation. PAMF 82, 93.

When Mr. Nida was running away from the officers, he was running with his arms and hands to the side of his body.  PAMF 101.  Mr. Nida never turned towards the officer before he was shot.  PAMF 102, 107, 111.  Mr. Aguilar was watching Mr. Nida as he got up from the ground until the shots were fired.  PAMF 103.   Mr. Nida did not reach in his pocket or in his waistband as he was running away from the officers.  PAMF 110.   It never appeared that Mr. Nida was trying to shoot the police officers.  PAMF 114.  Mr. Nida never made any threatening movements while he was running away from the police officers. PAMF 115.  It did not appear that the police officer was about to be killed when the shooting occurred. PAMF 116.  Mr. Aguilar was in the line of fire at the time of the shooting. PAMF 113.

**F.**     **The Unreasonable Detention of Mrs. Naily Nida.**

After Mrs. Naily Nida (Mrs. Nida) saw her husband collapse in the street, Mrs. Nida did not attempt to speak with her husband, complied with the officers' commands, moved back away from her husband as instructed, and complied with the officers' request for information as to who Mr. Nida was and that she was his wife. PAMF 172-4.  When Mr. Nida was put in the ambulance, Mrs. Nida walked to her truck to follow the ambulance to the hospital. PAMF 175-6.  Once she reached her truck, numerous officers around Mrs. Nida and Officer Reyes told Mrs. Nida that she could not leave. PAMF 177.  Mrs. Nida repeatedly asked and even begged to leave so that she could be with her husband.  PAMF 178, 182, 185, 187.  Officer Reyes and multiple male Downey police officers repeatedly told Mrs. Nida that she could not take the truck and that she could not leave. PAMF 177, 179, 180, 182, 183. The Officers took the keys to Mrs. Nida's truck, searched her purse, searched the truck, and took her identification. PAMF 183-4.  Downey Department policy requires officers detaining a person to take steps to either rule out or confirm that the person is

connected with a crime. PAMF 198.  However, no officer ran any check on Mrs. Nida or the white truck. PAMF 192-3. There was no information that any of the robbery suspects were female. PAMF 195.

Mrs. Nida's family members arrived several hours later and saw Mrs. Nida still standing by the white truck surrounded by Downey officers. PAMF 196.  They asked Downey police officers to either release Mrs. Nida, or tell her what crime she committed and arrest her. PAMF 187.  Downey police officers refused to release Mrs. Nida unless she agreed to return to the Downey police station for questioning. PAMF 189.  Mrs. Nida was released at 12:15 am. PAMF 189-91.

## III.   LEGAL STANDARD

The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).  The court must carefully examine all the physical evidence in the record, such as medical reports, contemporaneous statements by the officer and eyewitnesses, and any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992).   Because the reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom... summary judgment... should be granted sparingly" in excessive force cases.  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)

## IV.   ARGUMENT

### A.   The Detentions of Mr. and Mrs. Nida were Unreasonable Given that they did not Match the Description of the Robbery Suspects.

Nothing about Mr. Nida on the night of this incident matched the description of the robbery suspects. The suspects were black males in dark clothing wearing black

and plaid hooded sweatshirts.  Mr. Nida was Hispanic wearing a blue-and-yellow striped collared polo shirt, blue baggy pants, and a black baseball hat.  Based on the objective facts, the only commonality between the robbery suspects and Mr. Nida, is their gender.  Even if Mr. Nida shared the same race as the suspects (which he did not), a seizure based on this type of "commonalit[y]" is unreasonable. *See People v. Walker*, 210 Cal.App.4th 1372, *6 (2012) (*unreasonable* where the only commonality is both black males); *Mendoza v. City of Rome, N.Y.,* 872 F.Supp. 1110, 1117 (N.D.N.Y. 1994) (unreasonable where information described white teenage males in the vicinity of the crime); *People v. Bower*, 24 Cal.3d 638, 644 (1979) (race insufficient reason to connect individual with reported criminal activity). Suspicious conduct or flight in the presence of law enforcement is also insufficient reason to believe that Mr. Nida had committed a robbery. *U.S. v. Minor*, 382 F.Supp. 203, 207 (D. Hawaii 1974), citing *Sibron v. New York*, 392 U.S. 40, 66-67 (1968).

It is *per se* unreasonable to use an officer's belief that a witness may be mistaken (*see* Ds' Mot. at 13:3-4) as the basis for probable cause. In *Williams v. Superior Court*, 168 Cal.App.3d 349, 354 (1985), while searching for suspects of a nighttime robbery, the officer arrested the driver of different color sedan who was acting suspiciously based on the presumption that witnesses mistake colors at night.

> This "was not objectively reasonable under the circumstances" because his suspicion was "premised upon a[] [] materially distorted recollection of the true suspect description, [which] is as arbitrary and unreasonable an intrusion upon citizens' rights as one premised upon too vague a description or one where the detainee bears no reasonable resemblance to the officer's accurate recollection of the true description."

*Id*. (interpreting the Fourth Amendment's reasonableness standard).  In fact, if an officer believes that a witness is mistaken, the information is unreliable and cannot form the basis for probable cause. *Meakens v. Benz*, 2013 WL 56032, *3 (6th Cir., 2013), citing *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir.1999); *Brinegar v. U.S.,*

338 U.S. 160, 175-76 (1949) (probable cause must be based on "facts from reasonably trustworthy information"), citing *Carroll v. United States*, 267 U.S. 132, 162 (1925).

It was unreasonable to detain Mrs. Nida on the basis that either Mr. or Mrs. Nida was connected to the ATM robbery (*see* Section A *supra;* PAMF 195 (no female suspects reported)), because Mrs. Nida's truck was white (*see* PAMF 194 (suspects' vehicle information was vague and contradicted), or because she questioned why her husband was laying in the street or expressed her anger at their use of force against him. *See Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990) (even crass and inarticulate verbal challenges to the police are protected); *Mackinney v. Nielsen,* 69 F.3d 1002, 1007 (9th Cir. 1995)).  Mrs. Nida cooperated with all the officers' commands and with the search of her purse and the truck. PAMF 172-174, 183-4. Even if the initial detention of Mrs. Nida was proper, the scope of her detention was unreasonable; once a physical and computer search of her person and the truck yielded no evidence connecting Mrs. Nida with a crime, she should have been released. *See* PAMF 192, 193, 198, 199, 208.  The fact that Mrs. Nida was not handcuffed, was offered water and food, and had access to a phone is irrelevant, as she clearly was not free to leave despite her requests. *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980).

**B.   Officer Gilley's Use of Force Against Mr. Nida was Unreasonable.**

Since the detention of Mr. Nida was improper, any force used to seize him was unreasonable. "[O]fficer [Gilley's] call to [Mr. Nida] to stop and to [get] [down on the ground]…" his stepping on Mr. Nida's back, and his pointing his MP5 automatic weapon at the back of Mr. Nida's head shouting, "I'll blow your head off" "…clearly 'restrain(ed) [Mr. Nida's] freedom to walk away." *People v. Bower*, 24 Cal.3d at 643 (interpreting a seizure pursuant to the Fourth Amendment); *People v. Walker*, 210 Cal.App.4th at *5, *citing Michigan v. Chesternut*, 486 U.S. 567, 573 (1988), quoting *United States v. Mendenhall*, 446 U.S. at 554.  When Officer Gilley detained Mr. Nida in the alley, "[none] of the factors justifying [any] use of force were present. The crime under investigation was at most a misdemeanor…" (fleeing from Officer Reyes

and walking away from Officers Powell and Reyes), "…[Mr. Nida] was apparently unarmed and…" walking away from "…the officers in a peaceful way.  There were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the plaintiff." *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002). Officer Reyes did not broadcast that Mr. Nida jaywalked or had committed any crime, let alone that he was involved in the ATM robbery. *See Mendoza v. City of Rome, N.Y.,* 872 F.Supp. at 1116 (no probable cause where there is "no indication that information possessed by [one] officer was transmitted to arresting officer."); *compare U.S. v. Minor*, 382 F.Supp. at 207, *with Sibron v. New York*, 392 U.S. at 66-67. Here, when Officer Gilley seized Mr. Nida, all that he knew about Mr. Nida was that Mr. Nida was a Hispanic male wearing a striped shirt, baggy blue jeans, and a baseball hat, and that Officer Reyes reported that a Hispanic male in a plaid shirt ran from her.

   The shooting in this case was so egregious that no plausible argument can be made to support the use of deadly force by Officer Gilley. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Mr. Nida had committed no crime – let alone any felony -- and Officer Gilley admitted that Mr. Nida was not even under arrest when Gilley fired.  A robbery of $40 by men of a different race and different physical description was reported earlier in the evening at a closed bank involving no injuries or shots fired. Interestingly, Officer Gilley had stopped searching for the robbery suspects and broadcast that he was free to respond to other calls when he heard the dispatch from Officer Reyes that a male Hispanic was running from her.  Officer Gilley <u>admits</u> that neither Mr. Nida's race nor his clothing matched the descriptions of any robbery suspects.  The objective facts known to Officer Gilley at the time he shot Mr. Nida concerning any *possible* crime at issue was that Mr. Nida *partially* matched the description of someone who ran from Officer Reyes - but Officer Gilley had no information regarding what, if any, crime was committed by that person.  *See Mendoza,* 872 F.Supp. at 1116-17.  Officer Gilley also

-10-

admitted that Mr. Nida was not even under arrest. *Garner,* at 15, citing *Holloway v. Moser,* 193 N.C.185, 187 (1927); *State v. Smith,* 127 Iowa 534,535 (1905) (condemning use of deadly force to apprehend a misdemeanant).

Mr. Nida complied with Officer Gilley and Powell's commands to get down on the ground within five seconds of the commands. After searching Mr. Nida, Officer Gilley found no weapons.  Mr. Nida tried to run away when Officer Gilley threatened to blow his head off with his automatic weapon pointed at Mr. Nida.  Mr. Nida was unarmed and shot in the left back.  In fact, Officer Gilley was *aiming at Mr. Nida's back*.  Mr. Nida never turned toward the officers, never made any threatening movements toward the officers, never threatened the officers, never attempted to harm the officers, never reached in his pockets or his waistband, and his hands were visible and empty when Officer Gilley fired. The officers admit that the alley was illuminated. *Cf.*, Ds' Mot. at 13:12.  The lighting environment was also sufficiently bright such that Gerardo Aguilar could see the encounter from where he was standing.[1] Mr. Nida did not match any physical characteristic of the robbery suspects (other than that he was the same gender) and according to Officer Powell's testimony, was stationary when he was shot and did not qualify as a fleeing felon pursuant to Powell's training on deadly force.  Officer Powell – standing only a few feet away from Officer Gilley at the time of the shooting -- also conceded that there was no immediate defense of life scenario confronting the officers when Officer Gilley fired.  Officer Powell could see Mr. Nida's hands at the time of the shots and saw that Mr. Nida had nothing in his hands.  In fact, Officer Powell was surprised by the shots.  Additionally, the facts also support a finding that Mr. Nida

---

[1] The fact that it is dark outside or in the evening is an objectively <u>un</u>reasonable basis on which to presume that a person may be engaged in criminal activity or intends to harm an officer. *People v. Bower,* 24 Cal.3d at 645 (applying the Fourth Amendment), citing *People v. Superior Court (Kiefer)*, 3 Cal.3d 807, 825(1970); *People v. McReynolds*, 8 Cal.3d 655, 658 (1973).

was running away with both of his arms visibly pumping and never turned toward the officers.  Officer Powell acted like a reasonable officer and followed his training by not using deadly force against Mr. Nida. "An unarmed []individual... at a distance of fifteen to twenty-five feet is far from an "immediate threat" to that officer." *Bryan v. MacPherson*, 630 F.3d 805, 827 (9th Cir. 2010).

There were ample less-than-lethal options available to Officer Gilley to apprehend Mr. Nida, including his taser, pepper spray, baton, and the perimeter that had already been set up. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*); *Bryan v. MacPherson,* 630 F.3d at 831; *Deorle v. Rutherford*, 272 F.3d 1272, 1283–1284 (9th Cir. 2001); *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000).  Officer Gilley also failed to give any warning that he was going to use deadly force after Mr. Nida got up. *Harris v. Roderick,* 126 F.3d 1189, 1201 (9th Cir. 1997); *Bryan*, 630 F.3d at 831 (finding ample time to give that order or warning and no reason whatsoever not to do so); *Deorle*, at 1285.

Federal courts routinely find the use of deadly force *unreasonable* in cases involving circumstances far more serious than this.

> "In *Garner* itself, the fleeing suspect was a burglar. *See* 471 U.S. at 3–4.  In *Ting*, the suspect was part of a major narcotics organization. *See* 927 F.2d at 1507–08.  In *Curnow*, officers believed that the suspect had assaulted a woman. *See* 952 F.2d at 323. In *Andaya*, the suspect had just violently assaulted the officer. *See* 958 F.2d at 883–84. In *Harris*, the suspect had fired shots into the woods and may even have been the man who killed a United States Marshal. *See* 126 F.3d at 1193. In none of these cases, including *Garner*, did the suspect's crime justify the use of deadly force."

*Haugen v. Brosseau,* 339 F.3d 857, 864 (9th Cir. 2003) (reversed on other grounds) 543 U.S. 194 (2004).

Officer Gilley's "turning" explanation is disputed by the diagram drawn by eye-witness Gerardo Aguilar ("Mr. Aguilar") during his deposition (Exhibit E to Partow Decl.), who puts Mr. Nida in front and to the right of Officer Gilley when the shots

-12-

were fired.  According to Mr. Aguilar, Mr. Nida never turned toward the officers just before Officer Gilley shot him.  Plaintiffs' expert Timothy Palmback also opines that the relative position of Mr. Nida and Officer Gilley in the alley as described by Mr. Aguilar's diagram is consistent with and accounts for the back-to-front and slight left-to-right trajectories of the bullet paths through Mr. Nida's torso, and is consistent with Mr. Nida not turning before he was shot.  Also, Officer Gilley never sated in his initial statement or until he was deposed that Mr. Nida turned.[2]

Defendants improperly argue that Officer Gilley's fear was reasonable because "Gilley could not rule out the possibility that [Mr.] Nida was armed." Ds' Mot. at 13:18.  However, the U.S. Supreme Court expressly rejected such a justification for deadly force, **"[r]estated in Fourth Amendment terms, this means [that] [Officer Gilley] had no articulable basis to think [that] [Mr. Nida] was armed."** *See Garner*, at 20 (emphasis added) (where "Garner appeared to be unarmed [but] [the officer] could not be certain [that] that was the case."). "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, at 1281; *see Brinegar, at* 176.[3] Moreover, Officer Gilley concedes that training is that you cannot shoot someone

---

[2] The reasonable inference in Plaintiffs' favor on summary judgment is that Officer's Gilley's "turning" explanation was made up after the fact. *See People v. Bower*, 24 Cal.3d 638, 647 (1979) (A seizure may not be justified after the fact on a basis not relied on by the officer at the time).

[3] As such, the objective facts that Mr. Nida was unarmed, committed no crime, did not match the description of the robbery suspects, never threatened or attempted to harm either officer or anyone else, never reached in his pockets or waistband, never made any threatening movements, was running away, and that Mr. Nida's hands were visibly empty, there is no articulable factual foundation for any of Officer Gilley's fantastic presumptions, including that "[Mr.] Nida was moving from defense to offense, and/or that the armed robber was turning to lay gunfire to cover his escape." Ds' Mot. at 13:23-25; *see also* Ds' Mot. at 13:12-15, 13:20-21, 13:28.

-13-

Case No. CV 12-01382 SJO (JEMx)

even if you have probable cause to believe they are armed and they are running away from you. PAMF 162.

Finally, the assertion that Mr. Nida allegedly begged Officer Gilley to shoot him is irrelevant. *See* Ds' Mot. at 14:10.  Officer Gilley admits it is objectively unreasonable for an officer to justify shooting someone based on the fact that the person asked them to.

In the context of a peace officer's use of force, "[a] state law battery claim is a counterpart to a federal claim of excessive use of force," and similar standards apply. *Brown v. Ransweiler,* 171 Cal.App.4th 516, 527 (2009); *Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1274–75 (1998) (looking to the standards of a federal excessive force claim to determine the burden of proof for a state law battery claim against an officer), citing *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1069 (S.D. Cal. 1994).  The factual disputes as to Plaintiffs' excessive force claims also preclude summary judgment as to the battery claims.

## D.      The Fleeing Felon Rule is Inapplicable to this Case.

Obviously, the fleeing felon rule is inapplicable since Mr. Nida committed no felony and did not match the description of the robbery suspects.  Also, since the officers received no information that anyone was injured during the robbery or that that any shots were fired, the fleeing felon rule is inapplicable because there is no predicate crime involving serious injury.  Furthermore, Officer Powell testified that based on his training, this was not an immediate defense of life situation or a fleeing gelon situation justifying the use of deadly force.  Officer Powell also testified that Mr. Nida was *stationary* and not running away when Officer Gilley shot him. Therefore, a jury could find that Mr. Nida, who had previously complied with the officers' commands, had stopped running in response to a command, and was actually *complying* with the officers' commands when he was shot.  Moreover, as explained by Plaintiffs' police practices expert Roger Clark, the POST standards and training

prohibit the use of deadly force in this case under a "fleeing felon" scenario. Clark Decl. at ¶ 11.

An officer may use deadly force to affect the arrest of a fleeing felon **only** if there are objective facts to show that deadly force is necessary to protect himself or others from imminent death or serious physical harm. *See Garner,* at 11; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) (denying qualified immunity to officer because it is clearly established that it is unreasonable to shoot fleeing felon who posed no immediate threat of death or serious bodily harm), citing *Kirby v. Duv*a, 530 F.3d 475, 483–84 (6th Cir. 2008); *Cunningham*, 229 F.3d at 1289 (shooting officers not entitled to qualified immunity where the "officers mistook plaintiff for a fleeing felon and shot him without reason to believe that he was reaching for his gun."); *Davis v. Little*, 851 F.2d 605, 607 (2d Cir. 1988) (unreasonable to use deadly force against escaped felon who fled from officers, was unarmed and made no threat to officers or any other person).

### E.    Officers Gilley and Reyes are Not Entitled to Qualified Immunity.

Qualified immunity is not available to the officers for two reasons.  First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 US 304, 313 (1995); *Glenn v. Washington Cnty.*, 673 F.3d 864, 870, fn. 7 (9th Cir. 2011), citing *Espinosa v. City & Cnty. of S.F.,* 598 F.3d 528, 532 (9th Cir. 2010) ("denial of summary judgment on qualified immunity grounds because 'there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights [, which] are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions'"); *Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact). Because of the overwhelming number of disputed issues of material facts in this case, including whether it was reasonable to

connect Mr. Nida with the ATM robbery, whether Mr. Nida was running or stationary when he was shot (*cf.* Ds' Mot. at 14:1-15), whether Mr. Nida was turning towards the officers when he was shot, and whether it was reasonable for Officer Gilley to believe that Mr. Nida posed an immediate threat of death or serious bodily injury while Officer Powell claims that there was no immediate threat to life, granting qualified immunity at this stage would violate this well-established precedent. *See Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens, J., dissenting) (the reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…"), citing *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) *(per curiam)* (Scalia, J., concurring in judgment); *id.,* at 233 (Stevens, J., dissenting); *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002).

Second, at the time of the shooting, the law was clearly established that an officer may not "seize an unarmed, nondangerous suspect by shooting him dead" in the absence of "probable cause to believe that the [fleeing] suspect poses an [immediate] threat of serious physical harm, either to the officer or to others." *Torres v. City of Madera,* 648 F.3d 1119, 1128 (9th Cir. 2011), *cert. denied,* (U.S. 2012), citing *Garner,* at 11; *Adams v. Speers,* 473 F.3d 989, 994 (9th Cir.2007) (denying qualified immunity where suspect's nondangerousness and officer's failure to warn before shooting placed the case squarely "within the obvious"); *Brosseau v. Haugen,* 543 U.S. at 197–99 (reaffirming the rule of *Garner* and explaining that it provides sufficient "fair warning" of a constitutional violation in "obvious" cases).

It has been clearly established since 2001 that an unreasonable mistaken use of force violates the Fourth Amendment. *Cf.* Ds' Mot. at 14:5-7.  "Not all errors in perception or judgment,[], are reasonable." *Torres v. City of Madera,* 648 F.3d at 1124; *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (qualified immunity denied where shooting officers mistakenly thought plainclothes police officer was a civilian), citing *Santos v. Gates,* 287 F.3d 846, 855 n. 12 (9th Cir.2002)

(whether the officers may be said to have made a 'reasonable mistake' of fact or law" is a jury question) (internal citation omitted).

Qualified immunity for the use of deadly force is routinely *denied* in cases *more severe* than this, where the suspects are armed with guns and have committed violent crimes. *See Curnow v. Ridgecrest Police,* 952 F.2d 321, 324–25 (9th Cir.1991) (suspect possessed a gun but was not pointing it at the officers and not facing the officers when they shot); *Ting v. United States,* 927 F.2d 1504, 1508–11 (9th Cir.1991) (gun); *Harris v. Roderick,* 126 F.3d at 1203 (violent crime); *Hopkins v. Andaya*, 958 F.2d at 887 (violent assault of officer).

**F.  The Undisputed Facts Satisfy Both the Deliberate Indifference and Purpose to Harm Standards Required to Sustain Plaintiffs' Fourteenth Amendment Claims.**

"This circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010) *cert. denied*, 131 S.Ct. 1492 (U.S. 2011), citing *Curnow ex rel. Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir.1991). "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d at 554, citing *Porter v. Osborne,* 546 F.3d 1131, 1137 (9th Cir. 2008).  Whether a plaintiff has standing to bring a claim for unlawful deprivation their familial relationship pursuant to the Fourteenth Amendment should be subject to consistent analysis and a single standard. However, courts have found conduct to "shock the conscience" where an officer acts with a purpose to harm unrelated to a legitimate law enforcement objective, or if actual deliberation is practical, where an officer acts with deliberate indifference. *Porter,* at 1137 (quoting *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 372 (9th Cir.1998).

The disputed issues of fact as to whether Mr. Nida was running or stationary, turning or facing away, and whether it was reasonable for Officer Gilley to perceive

an imminent threat of death when Powell testified that this was not an immediate defense of life situation precludes summary judgment as to Plaintiffs' Fourteenth Amendment claim.  Nevertheless, Officer Gilley's conduct meets either standard. Officer Gilley even admits that he was aiming at Mr. Nida's back for a few seconds before he fired. PAMF 156; *see F.C. v. County of Los Angeles*, 2010 WL 5157339, *6 (C.D. Cal. Dec. 13, 2010) (purpose to harm where autopsy report indicated shots had a back to front trajectory even where officer claimed the suspect was making a threatening movement);   *Porter*, at 1133 (purpose to harm where partner officer on scene did not shoot and was surprised that shots were fired); *Kirby v. Duva*, 530 F.3d at 483 (a few seconds sufficient time to deliberate and to realize no imminent threat).[4] In this case, Officer Powell admits that he could see both of Mr. Nida's hands and that there was no threat when the shots were fired.

**F.    There is No Immunity under California Law for Battery, Negligence, or False Arrest.**

The officers are not immune from liability for Plaintiffs' state law claims. See *Knapps v. City of Oakland*, 2009 WL 2390262. (N.D. Cal. 2009); *Garcia v. City ofMerced*, 637 F. Supp.2d 731 (E.D. Cal. 2008); *Megargee v. Wittman*, 550 F.Supp.2d 1190 (E.D. Cal.2008); *Martinez v. City of Los Angeles*, 141 F.3d 1373 (9th Cir. (Cal.) 1998);  S*cruggs v. Haynes*, 252 Cal.App.2d 256 (App.1 Dist. 1967).

**J.    Officer Reyes and Officer Gilley were Negligent.**

Under California law, police officers have a duty to use reasonable care in apprehending a suspect. *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1101 (2004).  While state law battery and Fourth Amendment excessive force claims share

---

[4] Deliberation before acting is commonly examined "not by the duration of time as much as it is the extent of the reflection." *People v. Koontz*, 27 Cal. 4th 1041, 1080, 46 P.3d 335, 361 (2002); *People v. Sanchez*, 26 Cal.4th 834, 849 (2001).

the same standard, the same is not true for negligence.[5] *See Brown v. Ransweiler*, 171 Cal. App. 4th at 538; *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 587-588 (1970) (recognizing pre-shooting negligent and negligent force claims).[6]  In *Munoz v. Olin*, 24 Cal.3d 629, 636 (1979), while investigating a series of arsons in the area, two officers pursued and one officer shot a man who they suspected was the arsonist. The Court found sufficient evidence,

> "...under the circumstances [that] the officers were negligent in identifying Munoz, the first man they saw in their rush, as the arsonist they had seen…[,] negligence in the failure adequately to warn Munoz and to attempt other means to apprehend him…[,] negligence on Olin's part in interpreting the situation to require shooting at Munoz[,] …[and] [t]hey could have found Olin negligent in the way he used his weapon under the circumstances, particularly in view of plaintiffs' evidence that he fired not just three but several bullets."

*Id.* at 636-37.  Similarly, Officers Reyes and Gilley were negligent in allegedly believing that Mr. Nida was one of the robbery suspects, in admittedly broadcasting an incorrect description of Mr. Nida wearing a *plaid* shirt, in failing to adequately warn Mr. Nida that deadly force was going to be used after Mr. Nida got up and ran, and in failing to use alternate means to apprehend Mr. Nida.

The City of Downey Police Department's policies and procedures are evidence of and "bear[] on the standard of care that [the City of Downey Police Department]

---

[5] Contrary to Defendants' Motion at 18:16-19, *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1271 (1998) does not discuss negligence and references battery only.  Pages 527-28 of *Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009) also contain no reference to negligence.

[6] *See also Hayes v. County of San Diego*, 638 F.3d 688, *6-7 (9th Cir.(Cal.) 2011) (holding that "the California Supreme Court is unlikely to find law enforcement officers owe no duty of care in regards to their pre-shooting conduct" and citing *Hernandez v. City of Pomona*, 46 Cal. 4th 510, 517-20 (Cal. 2009). The federal court proceeding in *Hayes v. County of San Diego* is stayed pending the California Supreme Court's resolution of this issue.

thought appropriate to insure the safety of others…" its officers, and adherence to a policy of the reasonable use of deadly force. *See Dillenbeck v. City of Los Angeles*, 69 Cal.2d 472, 477-78 (1968), citing *Powell v. Pacific Electric Ry. Co*., 35 Cal.2d 40, 46 (1950); *Beal v. Blumenfeld Theatres, Inc.*, 177 Cal.App.2d 192, 194 (1960); *Davis v. Johnson*, 128 Cal.App.2d 466, 472 (1954). *See also Grudt v. City of Los Angeles*, 2 Cal.3d at 588 (the officer's failure to follow the safety rules promulgated by his employer <u>constituted evidence of his negligence</u>); *Miller v. Kennedy*, 196 Cal. App. 3d 141, 145 (1987); *Gibson v. City of Pasadena*, 83 Cal. App. 3d 651, 658 (1978).

## K.   <u>There is Evidence to Support the Plaintiffs' Claim for Punitive Damages</u>

There is evidence to support a finding that Officers Gilley and Reyes acted with malice, oppression and in reckless disregard of Mr. and Mrs. Nida's rights when there was no information that either Mr. or Mrs. Nida were connected with the robbery and when Mr. Nida posed no threat to anyone when he was shot.  A jury could find that Officer Gilley shot Mr. Nida in the back as a punishment for running and that Officer Reyes detained Mrs. Nida in retaliation for her criticism of the officers' mistakes and use of force against her husband.

## IV.   <u>CONCLUSION</u>

Plaintiffs elect not to proceed with their First Amendment claim given this court's earlier denial of standing to Mr. and Mrs. Thaxton.  Plaintiffs also elect not to proceed with their *Monell* claim given that the City of Downey is vicariously liable for Plaintiffs' state law claims.  It is respectfully requested that this Court deny the remainder of Defendants' Motion for Summary Judgment in its entirety. Respectfully submitted,

Date: March 4, 2013          LAW OFFICES OF DALE K. GALIPO

s/ Melanie T. Partow

Dale K. Galipo
Melanie T. Partow
Attorneys for Plaintiffs